UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*, | : : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 12-1904 (RC) |
| v. | : : | Re Document No.: | 20 |
| BRISTOL MANOR HEALTHCARE CENTER, INC., | : : : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; AND VACATING THE ENTRY OF DEFAULT

### I. INTRODUCTION

The Service Employees International Union National Industry Pension Fund (the "Fund") is an "employee benefit plan" within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). The Fund and its Trustees brought suit under ERISA and the Labor Management Relations Act of 1947 ("LMRA") to collect unpaid contributions, interest, liquidated damages, and audit documents allegedly owed by Defendant, Bristol Manor Healthcare Center, Inc. ("Bristol Manor"), in violation of the applicable collective bargaining and trust agreements. After Bristol Manor failed to respond to the amended complaint, Plaintiffs filed for an entry of default, which the Clerk of the Court entered the next day. Plaintiffs now have moved for default judgment, and Bristol Manor has filed an opposition asking the Court to deny Plaintiffs' motion and set aside the default. For the

reasons explained below, the Court will deny the motion for default judgment and vacate the entry of default.

## II. BACKGROUND

### A. Bristol Manor's Alleged Delinquencies

Bristol Manor, a New Jersey corporation, is a party to a Collective Bargaining Agreement ("CBA") with the 1199 SEIU United Healthcare Workers East, New Jersey (the "Union"). *See* Joseph Decl. ¶ 4. The CBA requires Bristol Manor to make contributions to the Fund based on the number of compensable hours its employees work. *See* Joseph Decl. ¶¶ 5-6; Am. Compl., Ex. 1. In addition, Bristol Manor is a party to the Fund's Trust Agreement and Collections Policy, under which it is required to submit monthly remittance reports reflecting the contributions owed to the Fund. *See* Joseph Decl. ¶¶ 7-8; Am. Compl., Ex. 2. Also under the Trust Agreement, Bristol Manor is liable to the Fund for interest on its delinquent contributions at the rate of ten percent per year, liquidated damages at the rate of twenty percent after the commencement of a lawsuit, and attorneys' fees and costs. *See* Joseph Decl. ¶¶ 9-10; Am. Compl., Ex. 3. Further, when the Fund was determined to be in critical status beginning in January 2009, it established a rehabilitation plan that assessed surcharges to all employer contributions in the amount of five percent starting in June 2009, and then ten percent effective December 1, 2009. *See* Joseph Decl. ¶¶ 12-13.

According to Plaintiffs, Bristol Manor failed to remit certain reports and pay certain contributions, interest, and liquidated damages for the period of February 2010 through February 2014. *See* Joseph Decl. ¶¶ 14-15. Specifically, Plaintiffs claim that Bristol Manor failed to submit the following reports and contributions:

- Dietary and Housekeeping Employees: Bristol Manor owes $1,802.23 in contributions, $208.46 in interest, and $1,781.05 in liquidated damages for certain months from February 2010 through February 2014, along with reports for August 2013 and February 2014. *See* Joseph Decl. ¶¶ 18-20.

- Recreational Employees: Bristol Manor owes $703.51 in contributions, $196.40 in interest, and $550.00 in liquidated damages. *See* Joseph Decl. ¶¶ 9-10, 24-26. Additionally, Bristol Manor failed to submit reports for February 2010, March 2010, May 2012, August 2013, January 2014, and February 2014. *See* Joseph Decl. ¶¶ 22-24.

- Certified Nursing Assistants: Bristol Manor owes $1,273.15 in liquidated damages, and it failed to submit reports for February 2010, March 2010, August 2013, December 2013, January 2014, and February 2014. *See* Joseph Decl. ¶¶ 16-17.

In total, Plaintiffs claim that Bristol Manor owes $5,505.94 to the Fund. *See* Joseph Decl. ¶ 29.

Further, pursuant to the Trust Agreement, as well as the CBA and ERISA, Bristol Manor is obligated to provide information so that the Fund may complete an audit to verify that the correct amount of contributions is being paid. *See* Joseph Decl. ¶ 11. According to the Fund, it made repeated requests for this information, but Bristol Manor refused to provide the necessary documents, including: copies of its W-3s and W-2s for 2009 and 2010; the second page of the payroll register for 2009 for the periods of January 17, January 31, February 4, February 28, March 14, and April 11; and a key for the payroll codes. *See* Joseph Decl. ¶¶ 27-28.

### B. Procedural History

On November 26, 2012, Plaintiffs filed the original complaint against Bristol Manor. *See* Compl., ECF No. 1. After four months of inaction by both parties, the Court issued an order on March 29, 2013, requiring Plaintiffs to show cause for their failure to serve the complaint and summons on Bristol Manor in a timely fashion under the Federal Rules of Civil Procedure. *See* Show Cause Order, ECF No. 3. On April 5, 2013, Plaintiffs filed a response explaining their difficulties in serving Bristol Manor, *see* Pls.' Resp. Show Cause Order, ECF No. 4, and on June 4, Bristol Manor finally was served with the complaint. *See* Return of Serv., ECF No. 7. After

two more months of inactivity, however, the Court issued a Minute Order on August 30, 2013, requiring Plaintiffs to seek entry of default by September 13 and move for default judgment by October 14.

On September 3, 2013, Plaintiffs moved for the entry of default against Bristol Manor, *see* Pls.' Aff. for Default, ECF No. 9, which the Clerk of the Court entered on September 12. *See* Clerk's Entry of Default, ECF No. 10. But after the October 14 deadline for moving for default judgment passed without any action by Plaintiffs, the Court issued another order on November 25, 2013, requiring Plaintiffs to show cause for their continued failure to move for default judgment. *See* Show Cause Order, ECF No. 11. Plaintiffs responded on December 19 by explaining that given their ongoing negotiations with Bristol Manor, they did not file a motion for default judgment "because they believed it may be possible to resolve the matter without further use of judicial resources." Pls.' Resp. Show Cause Order, ECF No. 12. Plaintiffs then asked the Court for thirty days to file an amended complaint that would include new reports and contributions allegedly owed by Bristol Manor. *Id*.

On January 13, 2014, Plaintiffs filed the amended complaint in order to obtain the missing reports and to collect the unpaid contributions, interest, and liquidated damages owed by Bristol Manor. *See* Am. Compl., ECF No. 13. The amended complaint was served on Bristol Manor on January 17, 2014. *See* Return of Serv., ECF No. 17. After Bristol Manor failed to respond within the twenty-one days of service as is required by Rule 12(a)(1)(A), Plaintiffs filed for the entry of default on February 19, 2014, *see* Pls.' Aff. for Default, ECF No. 18, which the Clerk entered the next day. *See* Clerk's Entry of Default, ECF No. 19. After nearly two more months of inaction, however, the Court issued a Minute Order on April 10, 2014, requiring

Plaintiffs to file their motion for default judgment by May 12, 2014, or risk having the case dismissed for failure to prosecute.

On April 14, 2014, Plaintiffs filed a motion for partial default judgment in which they ask that the Court enter judgment in the amount of $8,118.94 for owed contributions, interest, liquidated damages, and attorneys' fees and cost. *See* Pls.' Mem. Supp. Mot. Def. J., ECF No. 20, at 13. Plaintiffs also ask that the Court retain jurisdiction over the matter pending Bristol Manor's full compliance with the requested judgment. *See id.* In response, Bristol Manor filed an opposition in which it asks the Court to deny Plaintiffs' motion and vacate the entry of default. *See generally* Def.'s Mem. Opp'n Mot. Def. J., ECF No. 26.

### III. ANALYSIS

Federal Rule of Civil Procedure 55 sets forth a two-step process for a party seeking default judgment: entry of default, followed by entry of default judgment. *See* Fed. R .Civ. P. 55. For the first step, Rule 55(a) provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). As to the second step, Rule 55(b) authorizes a court, or the clerk of the court depending on the circumstances, to enter a default judgment against the defendant for the amount claimed and costs. *See* Fed. R. Civ. P. 55(b). Thus, just as a court is empowered to dismiss a case when faced with dilatory tactics by a plaintiff, a district court has the discretion to enter default judgment when a defendant fails to defend a case appropriately. *See Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). At the same time, district courts must remain vigilant that "strong policies favor[] the resolution of genuine disputes on their merits." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

Before the Court might grant default judgment for Plaintiffs, however, Bristol Manor has moved to set aside the Clerk's entry of default. Under Federal Rule of Civil Procedure 55(c), a district court has discretion to vacate the entry of default only for "good cause," and courts in this Circuit consider three criteria when determining whether such cause exists: (1) if the default was willful; (2) if setting aside the default would prejudice the plaintiff; and (3) if the defendant has presented a meritorious defense. *See Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011); *Jackson*, 636 F.2d at 836. The Court addresses these three factors below.

### A. Willfulness

As this Court has explained before, "[t]he boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003) (citing *Gucci Am., Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)). A finding of bad faith is not a necessary predicate to the conclusion that a defendant defaulted "willfully." *Id*.

Bristol Manor argues that it received no advanced notice that Plaintiffs would seek default judgment, that it responded immediately once it learned of Plaintiffs' intentions, and that it was reasonable not to file an answer or otherwise respond sooner due to the ongoing settlement negotiations between the parties and Plaintiffs' failure to seek default judgment following the entry of default in the past. *See* Def.'s Mem. Opp'n Mot. Def. J., ECF No. 26, at 8-9. Indeed, the procedural history in this case illustrates Plaintiffs' previous failure to move for default judgment in a timely manner following the entry of default, including Plaintiffs' admission that they delayed filing such a motion after the first default because of active settlement negotiations.

*See* Pls.' Resp. Show Cause Order, ECF No. 12, at 2 ("As a result of these ongoing discussion, Plaintiffs did not file a Motion for Default Judgment on October 14, 2013 because they believed it may be possible to resolve the matter without further use of judicial resources.").

In addition, evidence provided by Plaintiffs suggests that they never gave Bristol Manor a deadline on which a response was required or they would move for default judgment. Thus, on March 25, 2014, Plaintiffs' counsel emailed Bristol Manor's counsel, "I am following up again on the below matters [listing the delinquent contributions and audit documents].... If I do not hear anything soon, I will be forced to file our motion for default." Ex. A, ECF No. 27-1, at 4. Plaintiffs, however, did not provide a specific timeframe for seeking default judgment, and they actually would delay for several more weeks by not acting until after the Court issued a Minute Order on April 10, 2014, threatening to dismiss the case for failure to prosecute if a motion for default judgment was not filed soon.

Further, on April 11, Plaintiffs' counsel forwarded the Minute Order to Bristol Manor's counsel and wrote, "I just received the below notification from the court and because we have not made any progress [we] will be filing a motion for default judgment either today or early next week." *Id*. at 6. It appears that this was the first time during the litigation that Plaintiffs indicated their intention to move for default judgment by a certain date, and on April 14, Plaintiffs finally filed the motion, after which Bristol Manor quickly responded with its New Jersey counsel seeking admittance to this jurisdiction and then filing an opposition memorandum after obtaining local counsel.

This Court has held that "[r]eliance upon representations made by opposing counsel may mitigate an intentional failure to respond if the court is convinced that such reliance was made in good faith." *Int'l Painters & Allied Trades Union*, 288 F. Supp. 2d at 26 (citing *Keegel v. Key*

7

*West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)). At the same time, the Court also has explained that "[b]y relying on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court, [a] defendant has failed to protect its own interests" and willfulness may exist. *Id.* (citing *Simon v. Pay Tel Mgmt., Inc.*, 782 F. Supp. 1219, 1226 (N.D. Ill. 1991)).

Thus, in *International Painters & Allied Trades Union & Industrial Pension Fund v. H.W. Ellis Painting Co.*, the Court found willfulness because even though the parties were engaged in settlement negotiations, defendant did not make "a good faith effort to adhere to the rules of the court and to protect [its] rights" since "it had no basis to ignore its obligations to file an answer, especially after plaintiff's counsel made it abundantly clear that no further continuances would be granted[.]" *Id.* at 27; *see also Simon*, 782 F. Supp. at 1226 ("Parties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders."). On the other hand, in *Delta Sigma Theta Sorority, Inc. v. LaMith Designs, Inc.*, the Court found good faith reliance and no willfulness when plaintiff had informed defendant that it would ask the Court to delay proceedings so the parties could explore settlement, and defendant then failed to file a response before plaintiff moved for default judgment. 275 F.R.D. 20, 25-26 (D.D.C. 2011).

Here, Plaintiffs' past lack of diligence in pursuing default judgment while the parties were engaged in negotiations created a reasonable basis for Bristol Manor to wait before filing a response, even though doing so was clearly in violation of the Federal Rules of Civil Procedure. *Cf. id.* at 25 ("Informal resolutions of disputes are certainly encouraged, but once a case is initiated with the Court, the parties have an independent obligation to comply with the Federal

Rules of Civil Procedure and the local rules of the Court."). Plaintiffs, moreover, never provided Bristol Manor with a specific deadline by which it had to respond, and when Plaintiffs eventually did move for default judgment, Bristol Manor promptly took action to protect its rights by retaining local counsel and presenting a defense. *Compare Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980) (finding no willfulness when plaintiff wrote to defendant reaffirming a willingness to settle, granting an informal extension to file an answer, and agreeing not to seek default judgment before a specified date, but plaintiff sought default before the extension expired), *with Flynn v. Pulaski Constr. Co.*, No. 02-CV-2336, 2006 WL 47304, at *8 (D.D.C. Jan. 6, 2006) (finding willfulness when defendants were warned of plaintiffs' intention to move for entry of default by a specific date but failed to respond). As such, the Court finds no "willfulness" because Bristol Manor acted in "good faith" when it failed to file an answer in reliance on Plaintiffs' past decision not to seek default judgment, as well as the ongoing settlement negotiations between the parties.

### B. Prejudice

"'[D]elay in and of itself does not constitute prejudice[.]'" *Serv. Employees Int'l Union Nat'l Industry Pension Fund v. Hamilton Park Health Care Ctr., Ltd.*, No. CV 14-84, 2014 WL 2566086, at *4 (D.D.C. June 6, 2014) (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003)). Instead, in evaluating the prejudice to a plaintiff in setting aside a default, a court should consider not the mere fact of delay but rather any effects the delay may have on the plaintiff, such as the loss of evidence or increased difficulties in obtaining discovery. *See Essroc Cement Corp. v. CTI/D.C., Inc.*, 263 F.R.D. 17, 21 (D.D.C. 2009). Further, an absence of prejudice to the plaintiff does not *per se* entitle a defendant to relief. *See Capital Yacht Club v. Vessel AVIVA*, 228 F.R.D. 389, 393-94 (D.D.C. 2005) (citations omitted)); *see also*

*Int'l Painters & Allied Trades Union*, 288 F. Supp. 2d at 31 ("The court has discretion to deny a motion to vacate if it is persuaded that the default was willful and that the defaulting party has no meritorious defenses." (citations omitted)).

Plaintiffs argue that they will suffer prejudice in the form of being forced to spend more time and money on collecting the contributions and reports from Bristol Manor if default judgment is not entered. Plaintiffs, however, bear responsibility for much of the time and money they already spent in this case given their failure to seek default judgment after the first entry of default, as well as their failure to move for default judgment in a timely manner following the second entry of default. Further, this Court has held that "delay and legal costs are part and parcel of litigation and typically do not constitute prejudice for the purposes of Rule 55(c)." *Capital Yacht Club*, 228 F.R.D. at 394; *see also Essroc Cement*, 263 F.R.D. at 21 (finding no prejudice when plaintiff merely asserted "that it will be 'force[d] to expend additional time and money to collect on [its] claim'" if the Court vacated the entry of default); *E.&J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064, 1091 (E.D. Cal. 2005) ("Having to try a case on the merits is not, without more, sufficient prejudice" when plaintiff's ability to pursue the claim is not otherwise hindered by the delay). Accordingly, the Court finds that Plaintiffs have failed to demonstrate that they will suffer any cognizable form of prejudice if the entry of default is set aside.

### C. Meritorious Defense

In determining whether a defendant has a meritorious defense, "[l]ikelihood of success is not the measure." *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980). Instead, "allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Mohamad v. Rajoub*, 634 F.3d 604,

606 (D.C. Cir. 2011) (internal citations and quotation marks omitted); *see also Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (noting that "the movant is not required to prove a defense, but only to assert a defense that it may prove at trial"); *Keegel*, 627 F.2d at 374 (accepting defendant's "somewhat broad and conclusory defenses" as meritorious).

To demonstrate a meritorious defense, Bristol Manor partially relies on a 2010 Settlement Agreement, *see* Def.'s Mem. Opp'n Mot. Def. J., ECF No. 26, at 11, but this agreement was between Bristol Manor and the Union, not the Fund. *See* Settlement Agreement, ECF No. 27-2. In addition, nowhere does the agreement provide that Bristol Manor has made the delinquent payments to the Fund, and even if it did, the agreement covered only through March 2010, whereas Plaintiffs seek contributions and reports owed from February 2010 through February 2014. *See id.* at 4.

Nonetheless, Bristol Manor also asserts that separate from the Settlement Agreement, it has made regular monthly contributions and submitted the appropriate documents such that it does not owe the money and reports that Plaintiffs seek through the amended complaint. *See* Def.'s Mem. Opp'n Mot. Def. J., ECF No. 26, at 11-12. If Bristol Manor ultimately can prove that it has paid the missing contributions and supplied all the necessary paperwork, that would constitute a complete and meritorious defense to Plaintiffs' claim.

\*           \*           \*

Having found that all three criteria for setting aside the default weigh in favor of Bristol Manor, the Court will exercise its discretion to vacate the entry of default for "good cause shown." *Keegel*, 627 F.2d at 373. As such, the Court also will deny Plaintiffs' motion for default judgment and allow the case to proceed to resolution on the merits. Finally, the Court notes that practically zero progress has been made in this case since it was filed in 2012, and

both parties share responsibility for the unnecessary and unjustified delays that have occurred. Further delays will not be tolerated by the Court moving forward.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is **denied**, and the February 20, 2014, entry of default is **vacated**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 29, 2014                                RUDOLPH CONTRERAS
                                                       United States District Judge