## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES INTERNATIONAL  :
UNION NATIONAL INDUSTRY PENSION  :
FUND, *et al.*,                  :
                                 :
          Plaintiffs,            :
                                 :        Civil Action No.:    12-1904 (RC)
     v.                          :
                                 :        Re Document No.:    36
                                 :
BRISTOL MANOR HEALTHCARE         :
CENTER, INC.,                    :
                                 :
          Defendant.             :

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Service Employees International Union National Industry Pension Fund is an

"employee benefit plan" and a "multiemployer plan" under the Employee Retirement Income

Security Act of 1974 (ERISA).[1] The Fund provides pension benefits to eligible employees of

contributing employers. Defendant Bristol Manor Healthcare Center, Inc. is one of the Fund's

contributing employers. Claiming that Bristol Manor failed to pay the Fund contributions,

interest, liquidated damages, and audit documents required under the applicable collective

bargaining and trust agreements, the Fund and its Trustees brought suit against Bristol Manor

under ERISA and the Labor Management Relations Act of 1947 (LMRA).[2]

---

[1] Pub. L. No. 93-406, §§ 3(3), 3(37), 88 Stat. 829, 833, 839 (codified as amended at 29 U.S.C. §§ 1002(3), 1002(37)).

[2] Pub. L. No. 80-101, 61 Stat. 136 (codified as amended at 29 U.S.C. §§ 141–197).

Plaintiffs have now moved for summary judgment on their claims for unpaid

contributions, interest, liquidated damages, outstanding remittance reports, and attorney's fees

and costs. Because Bristol Manor does not, in its opposition to Plaintiffs' motion, show a

genuine dispute as to any material fact impacting Plaintiffs' claims or requested remedies, the

Court will grant the Plaintiffs' motion for summary judgment.[3]

## II.  FACTUAL BACKGROUND

### A.  Bristol Manor's Contribution Obligations to the Fund

Defendant Bristol Manor is a New Jersey corporation. Pls.' Statement of Material Facts

¶ 3, ECF No. 36 [hereinafter Pls.' Statement]; Def.'s Resp. to Pls.' Statement of Undisputed

Material Facts ¶ 3, ECF No. 37-2 [hereinafter Def.'s Resp.]. In 2010, Bristol Manor entered a

collective bargaining agreement with 1199 SEIU United Healthcare Workers East, New Jersey

Region. *See* Pls.' Statement Ex. 1, at 8, 40, ECF No. 36-1 [hereinafter Collective Bargaining

Agreement].[4]

The collective bargaining agreement required Bristol Manor to make contributions to the

Fund based on the number of paid hours worked by employees covered by the agreement. *See id.*

at 31. Covered employees included "C[ertified] N[ursing] A[ssistant]s, dietary, housekeeping,

recreational aides, L[icensed] P[ractical] N[urse]s, and all other employees excluding

---

[3] The Court will also grant Plaintiffs' request for the Court to retain jurisdiction of this
case for the limited purpose of adjudicating any unpaid contributions documented in remittance
reports Bristol Manor must still produce. *See* Pls.' Mot. Summ. J. 1, ECF No. 36 (requesting that
the Court retain jurisdiction).

[4] Because this exhibit includes both the collective bargaining agreement and a later
addition to the agreement, it is not consecutively paginated throughout. When citing the
collective bargaining agreement, therefore, the Court cites to the page numbers automatically
generated by ECF.

professional employees, registered nurses, cooks, confidential, office clerical employees, supervisors, watchmen and guards." *Id.* at 8. For contribution purposes, paid hours worked excluded overtime pay, allowances given to employees to aid them in furnishing and maintaining their own uniforms, and pay in recognition of unused sick leave. *Id.* at 31.

Under the collective bargaining agreement, Bristol Manor also agreed to be bound to the trust agreement establishing the Fund, and to the Fund's collection policies. *See id.* at 33. *See generally* Pls.' Statement Ex. 2, ECF No. 36-2 [hereinafter Trust Agreement]; Pls.' Statement Ex. 3, ECF No. 36-3 [hereinafter Collections Policy]. The trust agreement affirmed Bristol Manor's obligation to send required contributions to the Fund, accompanied by any reports the Fund might require. Trust Agreement Art. III, § 3.1.

An "employee benefit plan" and "multiemployer plan" under ERISA, the Fund provides pension benefits to eligible employees of contributing employers. Am. Compl. ¶ 4, ECF No.13; Pls.' Statement ¶ 1; Def.'s Resp. ¶ 1; *see also* 29 U.S.C. §§ 1002(3), 1002(37). On April 30, 2009, the Fund issued a notice announcing that it was in "critical status," as defined under the Pension Protection Act of 2006 (PPA).[5] *See* Pls.' Statement Ex. 4, at 2–3, ECF No. 36-4 [hereinafter Critical Status Notices].[6] The PPA requires plans in critical status to adopt a rehabilitation plan that, among other things, imposes surcharges on contributing employers. 29 U.S.C. § 1085(e)(1), (7); Critical Status Notices 1–2. Accordingly, the Fund adopted its rehabilitation plan in November 2009. *See* Pls.' Statement Ex. 5, at 1, ECF No. 36-5 [hereinafter Rehabilitation Plan Notice].

---

[5] Pub. L. No. 109-280, sec. 202(a), § 305(b)(2), 120 Stat. 780, 869–70 (codified at 29 U.S.C. § 1085(b)(2)).

[6] Because this exhibit includes notices of critical status from multiple years, it is not consecutively paginated throughout. Thus, as with the collective bargaining agreement, the Court cites to the page numbers automatically generated by ECF.

Bristol Manor negotiated its collective bargaining agreement in 2010, the year after the Fund reached critical status and adopted its rehabilitation plan. Hence, the 2010 collective bargaining agreement set Bristol Manor's contribution rates "in accordance with the Pension Fund Preferred Schedule" detailed in the fund's rehabilitation plan. Collective Bargaining Agreement 33; *see also* Rehabilitation Plan Notice (discussing the rehabilitation plan's "Preferred" and "Default" schedules for employer surcharges). Starting on April 1, 2010, the collective bargaining agreement required Bristol Manor to contribute to the Fund an amount equal to 2.2% of its hourly salary payments to covered employees. *See* Collective Bargaining Agreement 31. The next year, on April 1, 2011, Bristol Manor's contribution amount increased to 2.37% of hourly salary payments. *See id.* And on April 2, 2012, the contribution amount became 2.55% of hourly salary payments. *See id.* In later years, the rehabilitation plan's Preferred Schedule provided for additional increases. *See* Rehabilitation Plan Notice App. B, at 3.

## B. The Fund's Collection Procedures

The Fund's "Statement of Policy for Collection of Delinquent Contributions" set procedures for collecting Bristol Manor's contributions. *See* Collections Policy. That policy declared that contributions are due "by the 15th day of the month following the month in which the work was performed for which the contributions are owed." *Id.* § 2.1. Supporting remittance reports had to accompany the contributions. *Id.* § 2.2; *see also* Trust Agreement Art. III, § 3.1 ("Each Employer . . . shall make such reports to the Fund as may be required by the Trustees."). Contributions were not timely made unless they were accompanied by these supporting remittance reports. Collections Policy § 2.2.

### C.  Additional Remedies Available to the Fund for Late or Unpaid Contributions

The Fund's trust agreement and collection policy declared that, if Bristol Manor did not submit its contributions and remittance reports by the due dates set each month, the Fund could collect interest and liquidated damages on Bristol Manor's delinquent contributions, as well as attorney's fees and costs if a lawsuit or other legal action was filed. *See* Trust Agreement Art. III, § 3.2; Collections Policy §§ 2.4, 5.1–5.4. The Fund's collection policy also specified that "[t]he obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g)." Collections Policy § 5.5; *cf.* 29 U.S.C. § 1132(g) (stating, in the codified version of ERISA section 502(g), that in actions for delinquent contributions, a court shall award prevailing plans their unpaid contributions, interest on the unpaid contributions, additional interest or liquidated damages, attorney's fees and costs, and other legal or equitable relief the court deems appropriate).

*a.  Interest*

Under the Fund's collection policy, Bristol Manor was required to pay interest on contributions "not received by the end of the month in which they are due." Collections Policy § 2.4. This meant that, typically, the Fund provided "a 15-day grace period prior to assessing interest on amounts owed." Anderson Decl. ¶ 21, ECF No. 36-6. When an interest payment was required, the collections policy specified that interest should be "calculated from the due date for the delinquent contributions through and including the date payment is actually received ty the Fund Office." *Id.* § 5.1. The collections policy set the interest rate at ten percent (10%) per annum. *Id.* If a month's interest was calculated to be less than one dollar, however, the collections policy excepted that month's interest from being charged. *Id.* § 2.4.

### b. Liquidated Damages

The collection policy also allowed the Fund to claim liquidated damages from Bristol Manor "[i]f contributions and supporting remittance report(s) are not received by the 15th day of the month following the month in which contributions are due." *Id.*; *see also* Trust Agreement Art. III, § 3.2 (giving the Fund the power to assess "liquidated damages (which . . . shall not be deemed to be a penalty) as the Trustees deem appropriate" when the Fund receives contributions after their due date). Accordingly, the Fund typically provided "a 30-day grace period to employe[r]s before assessing liquidated damages." Anderson Decl. ¶ 22. In cases, such as this one, in which "a lawsuit or other legal action is filed," the collections policy set the amount of liquidated damages as the greater of (1) the interest on the late contributions, as calculated under the collections policy, or (2) "20% of the delinquent contributions." Collections Policy § 5.2.

### c. Attorney's Fees and Costs

Lastly, the collection policy entitled the Fund to its attorney's fees and costs incurred in collection efforts against delinquent employers. *See id.* §§ 5.3, 5.4.

### D. Bristol Manor's Alleged Late and Unpaid Contributions

Between May 2010 and June 2015, the Fund's records show that it received many of Bristol Manor's required contributions after the dates on which the contributions were due. *See* Anderson Decl. Exs. A–C (listing the Fund's due dates and receipt dates for Bristol Manor's contributions); Jasinski Decl. Ex. A, ECF No. 37-4 (same). The Fund's records also show that Bristol Manor often made contributions in amounts less than the amounts the Fund calculated were actually due; these alleged underpayments occurred with increasing frequency over time. *See* Anderson Decl. Exs. A–C (listing the amounts Bristol Manor paid as well as the amounts the Fund calculated to be due); Jasinski Decl. Ex. A (same). Accordingly, the Fund assessed interest

and liquidated damages on Bristol Manor's allegedly late and unpaid contributions. *See* Anderson Decl. Exs. A–C (including columns for interest, liquidated damages, and additional interest due); Jasinski Decl. Ex. A (same, though the numbers in the columns differ).

### III.  PROCEDURAL HISTORY

On November 26, 2012, Plaintiffs filed suit under ERISA and the LMRA to collect the unpaid contributions, interest, and liquidated damages Bristol Manor allegedly owed and to obtain audit documents from Bristol Manor. *See* Compl. 1–2, 6, ECF No. 1. For more than one year afterward, little progress was made in this case because of difficulties serving Bristol Manor and the parties' inactivity during their settlement negotiations. *See SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, 307 F.R.D. 37, 39–40 (D.D.C. 2014) (recounting this case's history).

On January 13, 2014, Plaintiffs filed an amended complaint that sought the same relief but alleged more specific damages. *See* Am. Compl. 1–2, 8–10. After Bristol Manor failed to respond within twenty-one days of service as required by Federal Rule of Civil Procedure 12(a)(1)(A), Plaintiffs filed for an entry of default, the clerk entered the default, and Plaintiffs filed a motion for partial default judgment. *See* Pls.' Aff. for Clerk's Entry of Default, ECF No. 18; Default, ECF No. 19; Pls.' Mot. Partial Default J., ECF No. 20. On its review of the matter, the Court found that Bristol Manor did not willfully default, that setting aside the entry of default would not prejudice Plaintiffs, and that Bristol Manor asserted a meritorious defense to Plaintiffs' claims. *SEIU Nat'l Indus. Pension Fund*, 307 F.R.D. at 41–43. Accordingly, the Court vacated the entry of default, denied Plaintiffs' motion for default judgment, and allowed the case to proceed to resolution on the merits. *Id.* at 43.

The parties then conducted discovery over a six-month period. *See* Scheduling Order, ECF No. 32 (setting the discovery schedule). Plaintiffs now move for summary judgment on their claims against Bristol Manor. *See* Pls.' Mot. Summ. J., ECF No. 36. As before, Plaintiffs seek judgment on all known outstanding contributions Bristol Manor owes, as well as liquidated damages and interest. Pls.' Mem. P. & A. Supp. Mot. Summ. J. 1, ECF No. 36. Plaintiffs allege that both ERISA and the Fund's trust agreement and collections policy authorize their requested damages. *See id.* at 8 (citing 29 U.S.C. § 1132(g)(2)). Plaintiffs also seek attorney's fees, court costs, as well as injunctive relief in the form of an order requiring Bristol Manor to submit missing remittance reports for June 2015. *Id.* Lastly, Plaintiffs ask that the Court retain jurisdiction over the matter to order Bristol Manor to pay any amounts due based on the June 2015 reports, as well as any additional attorney's fees and costs accrued. *Id.*[7]

## IV.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

---

[7] Because Bristol Manor has produced all missing audit documents, Plaintiffs no longer seek audit documents from Bristol Manor. *See* Pls.' Mem. P. & A. Supp. Mot. Summ. J. 2 n.1.

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (citing *Anderson*, 477 U.S. at 257).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## V. ANALYSIS

### A. Liability

In their summary judgment motion, Plaintiffs seek judgment on two claims: (1) one for payment of Bristol Manor's unpaid contributions, with associated interest and liquidated damages owed to the Fund; and (2) another for an order requiring Bristol Manor to submit missing remittance reports. *See* Pls.' Mem. P. & A. Supp. Mot. Summ. J. 1–2. Because Bristol Manor's response to Plaintiffs' motion lacks any argument opposing liability, *see* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4, ECF No. 37, and because the Court's "independent scrutiny confirms

fatal shortfalls in the evidence necessary to support a verdict in [Bristol Manor's] favor," *Grimes v. District of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015), the Court finds Bristol Manor liable for both claims.

### 1.  Late and Unpaid Contributions

ERISA unambiguously provides that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145.[8] This provision "makes a federal obligation of an employer's contractual commitment to contribute to a multiemployer pension fund." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). Thus, an employer who fails to make contributions in accordance with a collective bargaining agreement to the multiemployer pension fund is liable under both ERISA and the contract memorialized in the collective bargaining agreement. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass LLC*, 635 F. Supp. 2d 21, 25 (D.D.C. 2009); *Serv. Emps. Int'l Indus. Pension Fund v. Aliquippa Cmty. Hosp.*, 628 F. Supp. 2d 166, 172 (D.D.C. 2009).

Here, Plaintiffs' submissions indicate that Bristol Manor has breached its obligations to contribute to the Fund by making late contributions and by failing to pay certain contributions. The Fund is a multiemployer pension plan under ERISA, *see* Pls.' Statement ¶ 1, and Bristol Manor was obligated to make contributions to the Fund in amounts set by the collective bargaining agreement, *see* Collective Bargaining Agreement 31. Bristol Manor was also obligated under the collective bargaining agreement to pay those contributions "by the 15th day

---

[8] 29 U.S.C. § 1145 is the codified version of ERISA section 515. *See* Multiemployer Pension Plan Amendments Act of 1980, Pub. L. No. 96-364, sec. 306, § 515, 94 Stat. 1208, 1295 (codified at 29 U.S.C. § 1145) (amending ERISA and adding section 515).

of the month following the month in which the work was performed for which the contributions [were] owed." Collections Policy § 2.1; *see also* Collective Bargaining Agreement 33 (stating the Bristol Manor agreed to be bound by the Fund's collection policies). Because the Fund's records show that it received many contributions late and in amounts less than those the Fund calculated were actually due, Plaintiffs have met their initial burden to identify evidence that they believe shows the absence of any genuine issue of material fact affecting Bristol Manor's liability. *See* Anderson Decl. Exs. A–C. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that the summary judgment movant has the initial burden to identify portions of the record that it believes show the absence of a genuine issue of material fact).

In response, Bristol Manor makes no arguments disputing its liability for late and unpaid contributions. *See* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4 (arguing only that there remains a "genuine dispute regarding the issue of damages").[9] The record likewise reveals no evidence exonerating Bristol Manor for late and unpaid contributions. *See, e.g.*, Jasinski Decl. ¶¶ 9–16, ECF No. 37-3 (addressing damages only). Thus, because no specific facts in the record reveal a genuine issue suitable for trial, the Court finds Bristol Manor liable to Plaintiffs on this claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### 2.  Remittance Reports

Bristol Manor's collective bargaining agreement also obligated it to submit remittance reports each month along with its contributions to the Fund. Collections Policy §§ 2.1–2.2; Collective Bargaining Agreement 33 (binding Bristol Manor to the Fund's collection policies).

---

[9] In an earlier filing, Bristol Manor claimed that it "does not owe the money to which Plaintiffs assert an entitlement." Opp'n Pls.' Mot. Partial Default J. 8, ECF No. 26. In its summary judgment opposition, however, Bristol Manor did not renew that claim. *See* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4.

The Fund's declaration and accompanying exhibits indicate that the Fund lacks remittance reports from June 2015. *See* Anderson Decl. ¶ 9; *id.* Exs. A–C. Thus, on the issue of Bristol Manor's liability for these reports, Plaintiffs have also met their initial burden to identify evidence that they believe shows the absence of any genuine issue of material fact.

Again, Bristol Manor makes no arguments disputing liability, *see* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4, and no evidence provided to the Court casts doubt on Bristol Manor's liability for the missing reports. The Court therefore finds Bristol Manor liable to Plaintiffs for the June 2015 remittance reports.

### B.  Damages

#### 1.  Framework for Calculating Damages

Because the Fund's damages for Bristol Manor's late and unpaid contributions arise under both ERISA and the collective bargaining agreement, the Court begins its damages discussion by reviewing the damages framework applicable here.

When "judgment in favor of the plan is awarded" in a multiemployer pension plan's action to collect unpaid contributions, ERISA requires the court to award the plan certain remedies:

(A)   the unpaid contributions,
(B)   interest on the unpaid contributions,
(C)   an amount equal to the greater of—
    (i)  interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
(D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and,
(E)   such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Under the statute, "interest on unpaid contributions shall be determined by using the rate provided under the plan." *Id.*

Bristol Manor's collective bargaining agreement entitles the Fund to the same categories of damages as those in § 1332(g)(2). *See* Collective Bargaining Agreement 33 (declaring that, if Bristol Manor defaulted or became delinquent, it would be liable for "interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees."); Collections Policy §§ 2.4, 5.1–5.3.

The collective bargaining agreement also goes further than ERISA in three ways. First, although the ERISA statute incorporates the contractual interest rate, it does not allow interest on all delinquent contributions—only ones unpaid at the time suit is brought. *See* 29 U.S.C. § 1132(g)(2) (allowing interest on the "unpaid contributions" only). The collective bargaining agreement, in contrast, contemplates interest on any delinquent contributions, including those paid in full when suit is brought, if Bristol Manor did not pay those contributions in the month in which they were due. *See* Collections Policy §§ 2.4, 5.1.

Second, just as with statutory interest, ERISA allows double interest or liquidated damages under § 1332(g)(2)(C) just for contributions that were unpaid at the time suit was brought. *See* 29 U.S.C. § 1332(g)(2)(C) (allowing liquidated damages based on the amount calculated as "unpaid contributions"); *Holland v. Bibeau Constr. Co.*, 774 F.3d 8, 18 (D.C. Cir. 2014) (noting "authority from six other circuit courts of appeals concluding that liquidated damages apply only to contributions that are unpaid as of the time a plan files suit"). But the collective bargaining agreement allows liquidated damages for any delinquent contributions, including those that were paid when suit was brought, if Bristol Manor did not pay those contributions by the fifteenth day of the month after the month in which they were due. *See* Collections Policy §§ 2.4, 5.2.

Third, in the calculation of a liquidated damages award, the collective bargaining

agreement starts with all *delinquent* contributions—not just *unpaid* contributions—and applies

an interest rate or multiplies by twenty percent. *See* Collections Policy § 5.2 (stating that

liquidated damages are equal to the greater of (1) the interest on the *delinquent* contributions, as

calculated under the collections policy, or (2) "20% of the *delinquent* contributions." (emphasis

added)). Because total *delinquent* contributions can far exceed total *unpaid* contributions,

liquidated damages awards under Bristol Manor's collective bargaining agreement may exceed

those under ERISA. *See, e.g.*, Anderson Decl. Ex. A (calculating unpaid contributions as

$14,219.20 and liquidated damages as $14,214.90, which is nearly 100% of the unpaid

contributions and thus goes beyond liquidated damages available under ERISA's 20% rate).

Because the Fund's possible contractual damages exceed its possible ERISA damages,

one can assess the Fund's damages by using just the collective bargaining agreement's

framework.[10] The Court now turns to that assessment.

## 2.  The Parties' Submissions

As damages for Bristol Manor's late and unpaid contributions, Plaintiffs claim

$48,962.63 in unpaid contributions, interest, and liquidated damages, along with attorney's fees

---

[10] The Court is aware of one court of appeals decision holding that § 1332(g)(2) preempts remedies that would otherwise be available (*e.g.* contractual remedies such as those under the collective bargaining agreement here). *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478–79 (8th Cir. 1988). But because Bristol Manor does not raise this argument, the Court deems it waived. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[U]ndeveloped arguments . . . are deemed waived.").

Furthermore, at least three other circuits have held that § 1332(g)(2) does not preempt contractual damages available under federal common law, which governs the interpretation of ERISA plans. *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 645–55 (7th Cir. 2001); *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 389–90 (6th Cir. 1991); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 216–17 (9th Cir. 1989).

14

and costs. Pls.' Mem. P. & A. Supp. Mot. Summ. J. 9; Anderson Decl. ¶¶ 18–25. They support

their damages claim with three spreadsheets, one for each of three classes of Bristol Manor

employees covered by the collective bargaining agreement: Certified Assistant Nurses (CANs),

dietary and housekeeping employees, and recreational employees. *See* Anderson Decl. Exs. A–C.

Declarations made by the Fund's Contribution Compliance Manager authenticate the three

spreadsheets. *See* Anderson Decl.; Suppl. Anderson Decl., ECF No. 40. Each spreadsheet

includes information about Bristol Manor's contributions to the Fund for work performed in

April 2010 through June 2015. *See id.* The spreadsheets tabulate

(A)    The contributions' due dates,
(B)    The dates on which the Fund received Bristol Manor's contributions,
(C)    The number of days (if any) elapsing between the contributions' due date
       and the dates they were received,
(D)    The employee hours worked during the relevant month,
(E)    The amount of contributions Bristol Manor paid,
(F)    The additional payments (if any) Bristol Manor made,
(G)    The amount of contributions the Fund calculated were due for each month,
(H)    Information about Bristol Manor's contribution rate for each month, and
(I)    Calculations of Bristol Manor's unpaid contributions, interest, and
       liquidated damages, as calculated on August 4, 2015.

*See id.* The sum of the "contributions due," "interest," "liquidated damages," and "add[itiona]l

interest due" calculated in each spreadsheet, *see id.*, is $48,962.63, the amount of damages

Plaintiffs request, *see* Pls.' Mot. Summ. J. 1.

     In response, Bristol Manor argues that "genuine issues of material fact persist as to the

amount of damages, making summary judgment inappropriate." Def.'s Opp'n Pl.'s Mot. Summ.

J. 2. Bristol Manor alleges that the Fund's damages are "based on mere speculation or

guesswork" because the Fund did not provide "specific support" documenting the payroll

numbers used to calculate the contributions due, nor "explanation supporting the large amounts

of liquidated damages claimed." *Id.* at 2–3. Additionally, Bristol Manor charges the Fund with

"inconsistent calculations of alleged amounts owed," as compared to previous spreadsheets the

Fund provided Bristol Manor. *Id.*; *see also* Jasinski Decl. Ex. A (reproducing spreadsheets similar to the Fund's, but with differing amounts of "liquidated damages" and "add[itiona]l interest due").

The Fund's reply addressed Bristol Manor's call for "specific support" by providing a "sample of the month to month reports and contributions for the period of December 2013 through May 2015." Pls.' Reply Supp. Mot. Summ. J. 5 n.1, ECF No. 39; *see* Suppl. Anderson Decl. Exs. 1–2, ECF Nos. 39-1, 39-2, 39-3, 39-4. Bristol Manor did not request an opportunity to file a sur-reply responding to this data.

### 3.  No Genuine Dispute of Material Fact

As noted above, *see supra* Part IV, after a summary judgment movant produces evidence showing the absence of any genuine issue of material fact, the non-movant must present affirmative evidence revealing a genuine issue that is suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). When damages under an ERISA multiemployer pension plan are in dispute, an employer opposing summary judgment must likewise "point to specific facts in the record to demonstrate a genuine issue for trial." *See Flynn v. Dick Corp.*, 565 F. Supp. 2d 141, 147 (D.D.C. 2008). As with liability, Plaintiffs here have met their initial summary judgment burden on damages, and Bristol Manor's opposition inadequately responds.

The spreadsheets supporting Plaintiffs' claimed damages take the form of summaries admissible in evidence under Federal Rule of Evidence 1006. *See* Anderson Decl. Exs. A–C. Under Rule 1006, a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Evidence under Rule 1006 must summarize underlying documents so

voluminous that comprehension would be "difficult" and "inconvenient," though not necessarily "literally impossible." *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008) (quoting *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998)). In addition, "the [underlying] documents themselves must be admissible; the [underlying] documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it." *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (citing *Hemphill*, 514 F.3d at 1358).

The Fund's spreadsheets meet this standard. They summarize "[Bristol Manor's] account with the SEIU Pension Fund, including the remittance reports that [Bristol Manor] has provided to the Fund, the contributions that [Bristol Manor] has remitted to the Fund, the dates on which the aforementioned reports and contributions were received, and the interest and liquidated [damages] that [were] assessed on any underpaid or late paid contributions." Anderson Decl. ¶ 17. Plaintiffs have produced "a significant sample" of these underlying documents, which covers the period between December 2013 and May 2015, and which totals nearly two hundred pages of documentation. Pls.' Reply Supp. Mot. Summ. J. 5 n.1; *see* Suppl. Anderson Decl. Exs. 1–2, ECF Nos. 39-1, 39-2, 39-3, 39-4. The documents underlying the Fund's spreadsheets are thus so "voluminous" that comprehension would be difficult and inconvenient.

The spreadsheets meet the other Rule 1006 admissibility requirements as well. Bristol Manor does not appear to dispute the admissibility of the spreadsheets' underlying documents, for it argued that Plaintiffs should have produced "specific support" for the figures in their spreadsheets. *See* Def.'s Opp'n Pl.'s Mot. Summ. J. 3. The underlying documents would have been available to Bristol Manor in discovery, and the record indicates that even without discovery Bristol Manor had access to many of the documents because Bristol Manor itself

provided the remittance reports to the Fund. *See* Pls.' Reply Supp. Mot. Summ. J. 5 n.1; *see, e.g.*, Suppl. Anderson Decl. Ex. 1, at 2–8, ECF No. 39-1 (reproducing a remittance report created by Bristol Manor and submitted to the Fund).[11] If questions about the spreadsheets' accuracy exist, the spreadsheets are still admissible "[e]ven if the calculations are mistaken," because "admissible evidence may be unpersuasive and a defendant has the opportunity to rebut it." *Hemphill*, 514 F.3d at 1359. And the spreadsheets are introduced and authenticated by the person who prepared them. *See* Anderson Decl. ¶ 17; Suppl. Anderson Decl. ¶¶ 3–7.

Because the Fund's spreadsheets fall squarely under Rule 1006's ambit, they may be used "to prove the content" of the underlying documents. *See* Fed. R. Evid.1006. Thus, where Bristol Manor alleges Plaintiffs do not "provide any sort of specific support" for the underlying data, Bristol Manor's argument falls flat. *See* Def.'s Opp'n Pl.'s Mot. Summ. J. 3. Even though Bristol Manor accuses Plaintiffs of "summarily stat[ing] the amounts they believe are owed" and "expect[ing] Bristol Manor and the Court to take the alleged amounts owed on their face," Rule 1006 allows Plaintiffs to do so. If Bristol Manor believes the summary evidence to be inaccurate, then the burden falls on Bristol Manor to rebut it with affirmative evidence of its own. *See Hemphill*, 514 F.3d at 1359; *Laningham*, 813 F.2d at 1241.

Bristol Manor's rebuttal evidence is, however, wholly inadequate. Bristol Manor has not produced its own estimate for the appropriate amount of damages. *See* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4. Nor has Bristol Manor produced a version of Plaintiffs' spreadsheets that Bristol Manor claims is accurate. *See* Jasinski Decl. ¶ 12 (describing spreadsheets with different figures from Plaintiffs' spreadsheets, but declining to claim that the alternative spreadsheets are

---

[11] The Supplemental Anderson Declaration's exhibits are not consecutively paginated, so the Court cites to the page numbers automatically generated by ECF.

accurate). Moreover, Plaintiffs correctly note that, because the spreadsheets Bristol Manor

produced were provided to Bristol Manor by the Fund during settlement negotiations, they are

inadmissible under Federal Rule of Evidence 408. *See* Pls.' Reply Supp. Mot. Summ. J. 4. *See*

*generally* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to . . . dispute a

fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 408(a)

(declaring inadmissible "a statement made during compromise negotiations about the claim"

when a party seeks to "disprove the . . . amount of a disputed claim").

In sum, Bristol Manor has produced no admissible evidence contradicting Plaintiffs'

spreadsheets, nor any colorable argument calling the spreadsheets' accuracy into doubt. It

therefore has not met its burden to point to specific facts in the record that reveal a genuine issue

suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).

### 4.  Damages Awardable

When a defendant does not produce any evidence demonstrating a genuine dispute of

material fact, no genuine issues exist for trial, the Court proceeds to decide whether the

undisputed facts establish that the plaintiffs are entitled to judgment as a matter of law. *See, e.g.*,

*Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 38–39 (D.D.C. 2011). Here, Plaintiffs'

spreadsheets are the only admissible evidence offered to show the appropriate total amount of

unpaid contributions, interest, and liquidated damages to award Plaintiffs. The preponderance of

the evidence thus weighs in favor of awarding Plaintiffs the unpaid contributions, interest, and

liquidated damages they request: $48,962.63. *See generally CIGNA Corp. v. Amara*, 563 U.S.

421, 444 (2011) (applying the "preponderance of the evidence" standard, which is "the default

rule for civil cases," to ERISA cases). The Court will therefore enter judgment in the amount of $48,962.63 to the Fund.

The collective bargaining agreement also entitles the Fund to an award of attorney's fees and costs. *See* Collective Bargaining Agreement 33; Collections Policy § 5.3–5.4. Attorney's fees will be assessed "at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts." Collections Policy § 5.3. Accordingly, the Court will direct the parties to submit briefing on the appropriate award of fees and costs.

### C.  Equitable Relief

Bristol Manor has made no arguments opposing Plaintiffs' request for outstanding remittance reports for the month of June 2015, nor any arguments opposing Plaintiffs' request for this Court to retain jurisdiction until the resolution of any amounts due based on the June 2015 data. *See generally* Def.'s Opp'n Pl.'s Mot. Summ. J. 1–4. Because Plaintiffs have shown they are entitled to the missing remittance reports, *see supra* Part V.A.2, the Court will grant Plaintiffs the relief they request. *See generally* 29 U.S.C. § 1132(g)(2) (allowing the Court to award "such other legal or equitable relief as the court deems appropriate").

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 28, 2016                                            RUDOLPH CONTRERAS
                                                                              United States District Judge