# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*, | : : : : | |
| Plaintiffs, | : : | Civil Action No.: 12-1904 (RC) |
| v. | : : | Re Document No.: 43 |
| BRISTOL MANOR HEALTHCARE CENTER, INC., | : : : | |
| Defendant. | : : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS AND ADDITIONAL DAMAGES

## I. INTRODUCTION

In this action, Plaintiffs Service Employees International Union Industry Pension Fund ("the Fund") and associated trustees seek an award of attorneys' fees and costs and additional damages incurred in the course of a claim against Defendant Bristol Manor Healthcare Center, Inc. ("Bristol Manor") for failure to pay required contributions to the Fund, as required under the parties' collective bargaining and trust agreements, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and the Labor Management Relations Act of 1947 ("LMRA").[2] *See* Pls.' Pet. For Att'ys' Fees and Costs & Add'l Damages, ECF No. 43 [hereinafter Pls.' Pet.]. Plaintiffs also request attorneys' fees associated with preparing their reply

---

[1] Pub. L. No. 93-406, §§ 3(3), 3(37), 88 Stat. 829, 833, 839 (codified as amended at 29 U.S.C. §§ 1002(3), 1002(37)).

[2] Pub. L. No. 80-101, 61 Stat. 136 (codified as amended at 29 U.S.C. §§ 141–97).

to Defendant's opposition. *See id.* Defendant disputes Plaintiffs' entitlement to attorneys' fees and, in the alternative, the reasonableness of the fee request and the request for additional damages. *See* Def.'s Br. Supp. Opp'n Pls.' Appl. Att'ys' Fees & Costs & Add'l Damages, ECF No. 46 [hereinafter Def.'s Opp'n]. The Court concludes that Plaintiffs are entitled to attorneys' fees for their original litigation, that their request is reasonable, and that they are entitled to the additional damages. Plaintiffs are also entitled to attorneys' fees for preparation of their reply. To correct minor inconsistencies in Plaintiffs' request, the Court uses amounts found in Plaintiffs' original petition (minus a deduction for a duplicative entry) to award fees. Accordingly, the Court grants Plaintiffs' petition for attorneys' fees and costs and additional damages in the amount of $33,064.90.[3]

## II. FACTUAL BACKGROUND

The Court set out extensive factual background in its Memorandum Opinion granting Plaintiffs' Motion for Summary Judgment, and only salient facts are laid out here. *See SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, No. 12-1904, 2016 WL 354873 (D.D.C. Jan. 28, 2016); *see also* Jan. 28, 2016 Mem. Op., ECF No. 42 [hereinafter Mem. Op.]. Defendant Bristol Manor entered into a collective bargaining agreement with 1199 SEIU United Healthcare Workers East, New Jersey Region. *See* Pls.' Statement Ex. 1, at 8, 40, ECF No. 36-1

---

[3] The Court recognizes minor inconsistencies in the amount Plaintiffs seek to recover. In their original petition, Plaintiffs request $33,298.85, when in fact the totals for each category add up to $33,298.90. *See* Pls.' Pet at 3. Plaintiffs also acknowledge that their initial petition duplicated a $234.00 entry. *See* Pls.' Reply at 9 n.2, ECF No. 47. In their reply, Plaintiffs accidentally duplicate their request for $405.15 in costs (which had already been included in the original petition's aggregated request for attorneys' fees and costs) and transpose two numbers in their request for additional damages. *See id.* at 9. Accordingly, the Court corrects these errors by deducting $234.00 from the total of the individual categories in Plaintiffs' original request to reach an award of $33,064.90.

[hereinafter Collective Bargaining Agreement]. The agreement required Bristol Manor to make contributions to the Fund based on the number of hours worked by employees, including Certified Nursing Assistants; dietary, housekeeping, and recreational aides; Licensed Practical Nurses; and other employees. *See id.* at 8. Pursuant to the collective bargaining agreement, Bristol Manor agreed to be bound to a trust agreement that established the Fund and the Fund's collection polices, which obligated Bristol Manor to send required contributions and remittance reports to the Fund. *See id.* at 33; *see also* Pls.' Statement Ex. 2, ECF No. 36-2 [hereinafter Trust Agreement]; Pls.' Statement Ex. 3, ECF No. 36-3 [hereinafter Collections Policy].

The Fund set procedures for collecting contributions through a "Statement of Policy for Collection of Delinquent Contributions." *See generally* Collections Policy. Contributions had to be made "by the 15th of the month following the month in which work was performed for which the contributions are owed" and be accompanied by remittance reports. *Id.* §§ 2.1, 2.2. Both the Trust Agreement and Collections Policy declared that the Fund could collect interest and liquidated damages on delinquent contributions in addition to attorneys' fees and costs in the event a lawsuit was filed. *See* Trust Agreement Art. III, § 3.2; Collections Policy §§ 2.4, 5.1–5.4. Both policies stated that these obligations were "contractual in nature and independent of provisions of ERISA" that governed awards of attorneys' fees, codified at 29 U.S.C. § 1132(g). Collections Policy § 5.5. Between May 2010 and June 2015, the Fund received many of the required contributions late, and some contributions were not received at all. *See* Anderson Decl. Exs. A–C, ECF No. 36-6; Janinski Decl. Ex. A, ECF No. 37-4. The Fund accordingly assessed interest and liquidated damages on Bristol Manor's late and unpaid contributions. *See* Anderson Decl. Exs. A–C; Janinski Decl. Ex. A.

Plaintiffs filed suit under ERISA and LMRA to collect the unpaid contributions, interest, and liquidated damages owed them by Bristol Manor and to obtain audit documents. *See* Compl. 1–2, 6, ECF No. 1. After over nearly a year of delay due to difficulties serving Bristol Manor, the clerk entered default in favor of Plaintiffs; the Court later vacated the entry of default and allowed the case to proceed to discovery. *See SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr.*, 307 F.R.D. 37, 39–43 (D.D.C. 2014) (spelling out this case's history in greater detail). After discovery, Plaintiffs moved for summary judgment on their claims against Bristol Manor. *See* Pls.' Mot. Summ. J., ECF No. 36. Plaintiffs sought outstanding contributions, liquidated damages, interest, and attorneys' fees and costs. *See* Pls.' Mem. P. & A. Supp. Mot. Summ. J. at 1, 8, ECF No. 36. The Court granted Plaintiffs' motion and directed both parties to "submit briefing on the appropriate award of fees and costs." *See* Mem. Op. at 29.

Plaintiffs now petition for attorneys' fees and costs and additional damages. *See generally* Pls.' Pet. Following their reply, Plaintiffs ultimately seek $19,023.60 in attorneys' fees and costs and $14,014.25 in additional damages for the period of June 2015 through December 2015.[4] *See* Pls.' Reply at 9, ECF No. 47.

### III. ANALYSIS

#### A. Plaintiffs' Entitlement to Attorneys' Fees

The parties dispute whether Plaintiffs are entitled to attorneys' fees under ERISA. A court "in its discretion" may award "a reasonable attorney's fee and costs of action to either party" for any action arising under ERISA. 29 U.S.C. § 1132(g)(1). If the action is brought under

---

[4] The request includes a $234 reduction from the previous amount sought for attorneys' fees because Plaintiffs corrected a duplicated entry. *See* Pls.' Reply at 9 n.2. The request, however, also includes several accounting errors. Accordingly, the Court does not award the full amount requested by the Plaintiffs in their reply. *See supra* note 3.

4

section 1145 to recover contributions to a multiemployer plan pursuant to a collective bargaining agreement, however, "the court *shall* award the plan . . . reasonable attorney's fees and costs of the action" if the plan receives a judgment in its favor. *Id.* § 1132(g)(2)(D) (emphasis added). The award of attorneys' fees under section 1132(g)(2) is mandatory and "does not fall to the discretion" of a court. *Connors v. Brady-Cline Coal Co.*, 668 F. Supp. 5, 10 (D.D.C. 1987); *see also United Retail & Wholesale Emps. Teamsters Union v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 134 (3d Cir. 1986) ("[T]he language of [section 1132(g)(2)] is mandatory."); *Trs. of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 931 (9th Cir. 1986) ("[F]ees are mandatory . . . under 29 U.S.C. § 1132(g)(2)."); 4 Alba Conte, *Attorney Fee Awards* § 27:3 (3d ed. 2016) (explaining that "§ 1132(g)(2) is mandatory"). The purpose of this provision is to "encourage enforcement of employer contributions" and protect funds from "the high cost of litigation and collection expenses." *Sheet Metal Workers Health & Welfare Tr. Fund v. Big D Serv. Co.*, 876 F.2d 852, 854 (10th Cir. 1989) (per curiam).

Defendant argues that section 1132(g) requires a two-step test. Under the first step, a court must first decide if a party is entitled to attorneys' fees at all using five factors described in *Eddy v. Colonial Life Insurance Co. of America*, 59 F.3d 201 (D.C. Cir. 1995). *See* Def.'s Opp'n at 4. If the court finds that the party is entitled to fees, Defendant argues, then a court must apply the lodestar analysis by multiplying the number of reasonable hours by the reasonable hourly rate to determine the amount of the award. *See id.* Defendant asserts that Plaintiffs are not entitled to attorneys' fees because they cannot demonstrate bad faith or that such an award is "necessary as a deterrent." *See id.* at 5. Finally, Defendant states that Plaintiffs should not be "rewarded . . . for muddying the waters" by providing inconsistent amounts of what was owed to Plaintiffs in contributions to the Fund. *See id.*

5

As Plaintiffs correctly state in their reply, Defendant fails to consider the applicability of section 1132(g)(2) to Plaintiffs. Pls.' Reply at 1–2. Plaintiffs have brought their action under section 1145 and received a judgment in their favor. Thus, they fulfill the requirements of section 1132(g)(2) and are entitled to "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D). Because an award under section 1132(g)(2) is mandatory, the Court does not consider factors as it would be required to do in a petition for attorneys' fees under section 1132(g)(1).[5]

### B. Reasonableness of Plaintiffs' Request for Attorneys' Fees

Defendant argues in the alternative that Plaintiffs' request for attorneys' fees must be "adjust[ed] down" because Plaintiffs have failed to meet the burden of demonstrating that their request is reasonable. *See* Def.'s Opp'n at 5. A reasonable attorneys' fee is initially calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This produces the lodestar figure, which is subject to revision upward "only in '*exceptional*' circumstances," *Murray v. Weinberger*, 741 F.2d 1423, 1428 (D.C. Cir. 1984) (quoting *Blum*, 465 U.S. at 897), but may be

---

[5] Defendant cites *Eddy* and *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448, 1451 (5th Cir. 1995) to support its argument that a two-part test should be used to determine the award of attorneys' fees in this case. But neither case was brought under section 1145 for delinquent payments to a multiemployer plan pursuant to a collective bargaining agreement. *See Eddy*, 59 F.3d at 202 (allegation that defendant "violat[ed] its fiduciary duty . . . with respect to [a] group health and life insurance plan[]"); *Todd*, 47 F.3d at 1451 (allegation that "defendants breached their fiduciary duties under . . . §§ 1104(a) and 1109(a)"). Thus, each court had discretion under section 1132(g)(1) to award attorneys' fees.

Even if the Court had discretion to refuse an award of attorneys' fees, Defendants are contractually bound to pay Plaintiffs attorneys' fees and costs in the event of a lawsuit under the Collections Policy. *See* Collections Policy § 5.5 (stating that the "obligations to pay [attorneys'] fees chargeable under this policy are contractual in nature and independent of provisions of ERISA").

adjusted downward "by a reasonable percentage" due to inconsistencies in billing records or requests. *See, e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004).[6]

*1. Hourly Rate*

Courts first consider the reasonableness of the hourly rate. *See Role Models*, 353 F.3d at 968. The reasonableness of a rate is calculated by reference to the "prevailing market rates in the relevant community." *In re Olson*, 884 F.2d 1417, 1423 (D.C. Cir. 1989) (quoting *Blum*, 465 U.S. at 895). Because of the "inherent[] difficult[y]" in determining this rate, fee applicants are required to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 895 n.11. This Circuit has traditionally accepted updated versions of the *Laffey* Matrix to establish the prevailing market rate in the community for certain types of complex federal court litigation. *See Role Models*, 353 F.3d at 970; *see also Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995). Compensation at market rates is allowed for attorneys, paralegals, and law clerks. *See In re Donovan*, 887 F.2d 982, 992–93 (D.C. Cir. 1989).

Plaintiffs have met their burden to demonstrate that their hourly rates are reasonable. Plaintiffs reference the *Laffey* Matrix and indicate that fee awards in many types of cases in this Circuit are made at that rate. Plaintiffs then demonstrate that the rates they seek are significantly below the *Laffey* rates. *See* Pls.' Ex. 2, ECF No. 43-2. Plaintiffs additionally provide the rates at which each lawyer, paralegal, and law clerk at their law firm billed and their requisite amount of experience to inform comparisons to the *Laffey* Matrix. *See* Pls.' Ex. 1 ¶¶ 4, 6, ECF No. 43-1.

---

[6] *Murray* and several other cases cited involved awarding attorneys' fees under fee-shifting statutes other than ERISA. However, courts have traditionally relied on case law arising under fee-shifting statutes in general to govern the reasonableness analysis of attorneys' fees. *See, e.g.*, *Role Models*, 353 F.3d at 968 ("Throughout our analysis, we will rely on [Equal Access to Justice Act] precedent as well as on case law arising under other fee-shifting statutes.").

Defendant does not substantially contest the reasonableness of the Plaintiffs' rate.[7] Accordingly, given the lack of countervailing evidence, the Court finds that Plaintiffs' hourly rate is reasonable.

### 2. *Number of Hours Requested*

Once the hourly rate is determined, courts evaluate the reasonableness of the number of hours requested. The party requesting fees has the burden to establish that the number of hours in its fee request is reasonable, and it must provide documentation that is of "sufficient detail and probative value" to allow the court to evaluate "with a high degree of certainty" whether the hours were "reasonably expended." *In re Olson*, 884 F.2d at 1428 (emphasis omitted) (quoting *United Slate, Tile, & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). Courts examine several attributes of the documentation provided by the requesting party to assess the reasonableness of the number of hours requested, including duplication of time entries, insufficient detail in billing descriptions, block billing, and billing inconsistencies. *See generally Role Models*, 353 F.3d at 970–74 (analyzing these factors in a motion for attorneys' fees under Equal Access to Justice Act). If a district court finds that the requesting party has failed to document its hours sufficiently, it may "reduce the award [of attorneys' fees] accordingly." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Defendant argues that Plaintiffs' documents contain block billing entries that "ma[ke] it impossible to decipher how much time was spent on a particular task." Def.'s Opp'n at 6. Defendant cites two particular instances of purported block billing. In the entries for April 18, 2014 and May 30, 2014, Defendant takes issue with the failure of Plaintiffs to indicate how much

---

[7] The Court notes that "perfunctory and undeveloped arguments . . . are deemed waived." *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).

time was billed to each distinct task in the billing descriptions.[8] Defendant also asserts that the entry for April 18, 2014 billed for a National Labor Relations Board ("NLRB") matter, which it claims is not related to the instant litigation. *See id.*

Defendant analogizes to *Role Models* to support its argument about block billing. There, the D.C. Circuit found that Role Models satisfied the statutory requirements for an award of attorneys' fees, but that Role Models "failed to justify the amount it [sought]." *See Role Models*, 353 F.3d at 965. The court found that Role Models had "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness." *Id.* at 971. One such entry included 10.25 hours for six tasks and another 1.25 hours for four tasks; both included bankruptcy matters that were not relevant to the litigation at hand. *See id.*

But the problems in *Role Models* were much more "pervasive" than those in the instant litigation. *See Fitts v. Unum Life Ins. Co. of Am.*, 680 F. Supp. 2d 38, 42 (D.D.C. 2010); *see also DL v. District of Columbia*, 256 F.R.D. 239, 245 & n.12 (D.D.C. 2009) (instances of block billing were not "nearly as egregious" as those in *Role Models*). Extensive block billing is inappropriate, but fee applications "need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted.'" *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). Indeed, most of Plaintiffs' billing entries describe a discrete task and bill less than one hour. *See generally* Pls.' Ex. 1 at 6–19. Many of the entries that are over one hour specify a single task; even the entries that are not limited to a single task list several that all

---

[8] The entry for April 18, 2014 billed 0.5 hours and reads "[t]elephone conference with Employer attorney, review NLRB settlement agreement, attorney conference." *See* Pls.' Ex. 1 at 8. The entry for May 30, 2014 billed 2.6 hours and reads "[r]eview motion to set aside default; review settlement agreement; review email for correspondence re: motion for default judgment." *See id.* at 9.

9

involve one filing. *See, e.g.*, *id.* at 16 (entry on August 7, 2015 for 6.2 hours describes six tasks related to drafting and filing the motion for summary judgment). Thus, the Court finds that the limited block billing in Plaintiffs' billing records does not itself make their request for attorneys' fees unreasonable.[9]

Defendant further argues that Plaintiffs' documentation contains duplicative entries. Defendant cites two entries on October 10, 2014 that are identical.[10] In their reply, however, Plaintiffs recognized and corrected the only cited duplicative entry, adjusting down their request for fees and costs accordingly. *See* Pls.' Reply at 6. Defendant cites no additional examples of duplicative entries, and the Court can find none. This small error that was corrected quickly does not justify an overall reduction of the fee petition.

Defendant also argues that Plaintiffs improperly billed 29.7 hours to draft and file a summary judgment motion and reply that are "virtually identical" to similar motions filed in three other pension fund contribution claims handled by the same firm. *See* Def.'s Opp'n at 6–7. This claim is also unpersuasive. As Plaintiffs assert, each summary judgment motion involved distinct factual situations, including different collective bargaining agreements and different parties. *See id.* The Court concludes that 26.7 hours is a reasonable amount of time to spend on a summary judgment motion, even if it is a routine motion that is similar to other motions filed in similar cases. This modest amount of time expended by Plaintiffs does not nearly approach the

---

[9] Defendant's additional claim that Plaintiffs improperly billed for work on April 18, 2014 on the "NLRB settlement" is easily refuted. As Plaintiffs assert in their reply, Defendant "produced the settlement" itself as part of its argument for why Bristol Manor was not liable for contributions. *See* Pls.' Reply at 4. Thus, Plaintiffs properly billed for research on the NLRB settlement because they needed to prepare their response to Defendant's argument.

[10] Both entries bill 0.6 hours for "[r]eview correspondence from court re: substitution of counsel; update report." *See* Pls.' Ex. 1 at 10.

excessive billing addressed in *Role Models*. *Compare* Pls.' Ex. 1 at 19 (55.15 total hours billed), *with Role Models*, 353 F.3d at 972 (over 1000 hours spent on the litigation).

### C. Additional Damages

Plaintiffs also request additional damages for the period of June 2015 through December 2015. Plaintiff asserts that the Fund's records show that Defendant owes $11,114.03 in unpaid contributions for work performed at three sites governed by the collective bargaining agreement. *See* Pls.' Pet. at 3. Plaintiffs also seek $704.42 in interest and $2,222.80 in liquidated damages. This adds up to $14,041.25 in additional damages. *See* Pls.' Pet. at 3–4. Defendant states that this demand should be denied because Plaintiffs have failed to fulfill their obligation to bargain collectively under the LMRA. *See* Def.'s Opp'n at 7. Defendant also claims that Plaintiffs seek to "unilaterally increase the percentage Bristol Manor must contribute" to the Fund, and that it "fully complied" with the terms of the collective bargaining agreement. *See id.* at 8, 10. Defendant's arguments are unavailing.

As Plaintiffs state in their reply, Plaintiffs have not unilaterally sought an increase to the contributions rate; the rate of contributions being sought for June 2015 through December 2015 is identical to the rate at which the Court issued a judgment for supplemental contributions. *See* Mem. Op. at 19–20. Furthermore, any increase in contribution percentage has come from the Fund's Preferred Schedule, which Defendant agreed to follow in the contract between the two parties.[11] *See id.* at 3–4. Accordingly, the Court awards Plaintiffs $14,041.25 in additional damages for the period of June 2015 through December 2015.

---

[11] Defendant's argument that Plaintiffs have failed to uphold their duty to bargain under the LMRA is difficult to follow. It appears that all of Defendant's citations related to this issue are to the National Labor Relations Act ("NLRA"), which is not at issue in this litigation. Given the undeveloped nature of this argument, the Court need not go further to reject it. *See Johnson*,

## D. Attorneys' Fees in Preparing the Reply

Plaintiffs also request that the Court award them attorneys' fees "associated with preparing [their] reply" because of the "frivolous objections" and "misrepresent[ations]" that Defendant makes in its opposition to Plaintiffs' petition. *See* Pls.' Reply at 9. Courts look to the underlying action to determine entitlement to fees incurred in pursuit of fees. *See Am. Fed'n of Govt. Emps., AFL-CIO, Local 3882 v. Fed. Labor Relations Auth.*, 994 F.2d 20, 22 (D.C. Cir. 1993) ("No matter what the purpose of an attorney's fee provision . . . the availability of 'fees for fees' is essential to carrying out Congress' goal in including the provision in the first place."). Because "beneficiaries must be assured that they will be able to collect" fees to which they are entitled, awarding "fees for fees" is appropriate if the litigants were entitled to fees in the underlying action. *See Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 808 (D.C. Cir. 1998) (applying this rule in the context of section 1132(g)(2)). Courts in this District often credit time spent on subsequent fee litigation, including attorney time spent on drafting a reply brief. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, No. 11-442, 2016 WL 3029942, at *2 n.2, *6 (D.D.C. May 25, 2016) (following a remand from the D.C. Circuit, crediting hours spent on reply briefing in fees dispute, but reducing all fees by a reasonable percentage for other reasons); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 240 (D.D.C. 2011) (granting fees for time "spent preparing *and defending* [a] motion for attorney's fees" (emphasis added)). The Court has already determined that Plaintiffs are entitled to fees in their claim under section 1145 of ERISA. As such, the Court grants Plaintiffs' request for attorneys' fees associated with this reply. But it is unclear to the Court why Plaintiffs did not also

---

953 F. Supp. 2d at 250 ("[p]erfunctory and undeveloped arguments . . . are deemed waived") (internal quotation marks and citations omitted).

seek fees for preparation of the petition as well. Accordingly, within two weeks of the docketing of the contemporaneous order, Plaintiff is to submit evidence supporting the requested amount of fees for the preparation of their reply and, if appropriate, the fee petition itself.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' petition for attorneys' fees and costs and additional damages is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 30, 2016                                                                        RUDOLPH CONTRERAS
                                                                                                                  United States District Judge